## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Lynsey Barger,                                    Civil No. 22-2972 (DWF/DTS)

        Plaintiff,

v.                                                **MEMORANDUM**
                                                  **OPINION AND ORDER**
BlueSky TelePsych, LLC,

        Defendant.

---

Blaine L.M. Balow, Esq., Maria Victoria Olszewska, Esq., HKM Employment Attorneys, Robyn S. Uri, Esq., Halunen Law, counsel for Plaintiff.

Pamela Abbate-Dattilo, Esq., William Thomas Wheeler, Esq., Fredrikson & Byron, PA, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on Defendant BlueSky TelePsych, LLC's ("BlueSky") motion to dismiss. (Doc. No. 12.) Plaintiff Lynsey Barger opposes the motion. (Doc. No. 21.) For the reasons set forth below, the Court grants in part and denies in part BlueSky's motion.

## BACKGROUND

BlueSky is a telemedicine mental health care provider, and Barger is a board-certified physician assistant. (Doc. No. 9 ("Am. Compl.") ¶¶ 2, 7.) In February 2022, Barger received and accepted an offer of employment from BlueSky. (*Id.* ¶ 10.) BlueSky sent Barger an employment contract ("Agreement") that she signed on March 2,

2022.  (*Id.* ¶ 11.)  The Agreement stated that her employment would begin on April 1, 2022.  (Doc. No. 1-2 ("Agreement") § 4.1.)  The Agreement required that Barger maintain a license to practice medicine in Illinois and Minnesota.  (*Id.* § 2.4.)  The Agreement further provided that Barger would work thirty-two clinical hours and eight administrative hours per week.  (*Id.* § 2.1.)  Her annual salary was $127,500.00.  (*Id.*, Ex. A.)

After entering into the Agreement, Barger spent $561 to obtain licenses in Illinois and Michigan.[1]  (Am. Compl. ¶ 31.)  In an email, BlueSky's owner, Dr. Richelle Strauss, said that they would focus on Barger obtaining licenses in Minnesota, Illinois, and Michigan and that "we are of course paying for all of it."  (*Id.* ¶ 28.)  Barger was scheduled to start seeing patients May 16, 2022.  (*Id.* ¶ 22.)  Prior to that, Barger spent four hours completing onboarding documents.  (*Id.* ¶ 20.)  She then gained access to and began using an employee email, and BlueSky placed Barger's photograph and professional biography on its website.  (*Id.* ¶¶ 21, 27.)  Additionally, she completed an electronic health record training, and she received full access to patient records and was encouraged to review them.  (*Id.* ¶ 29.)

At the end of March 2022, Dr. Strauss asked Barger to interview a potential new hire.  (*Id.* ¶ 25.)  Barger conducted the interview by herself.  (*Id.*)  Following the interview, Barger gave Dr. Strauss a report about her impressions of the interviewee and

---

[1]   While the Agreement stated that Barger had to be licensed in Illinois and Minnesota, the complaint states that she applied for licenses in Illinois and Michigan. (*Compare* Agreement § 2.4, *with* Am. Compl. ¶ 31.)

recommended that BlueSky hire her.  (*Id.*)  BlueSky later offered the interviewee a job.
(*Id.*)

In early May 2022, Barger began to suspect that Thao Vu, BlueSky's
credentialling specialist, "had been signing various licensing, credentialing, and medical
applications on her behalf without her knowledge of what was actually being submitted."
(*Id.* ¶ 32.)  Barger sent Dr. Strauss a text, expressing her concerns.  (*Id.* ¶ 33.)  Dr. Strauss
responded that she "ha[s] confidence in [Vu] and how she handles this."  (*Id.*)  In a phone
call later that day, Vu admitted that she had filled out various forms and signed Barger's
name.  (*Id.* ¶ 34.)  Barger reiterated that she had not given Vu permission to sign her
name.  (*Id.*)

Barger followed-up with Dr. Strauss by email, stating again that Vu "never asked
for [her] permission" and never sent her any documents to review.  (*Id.* ¶ 35.)  The next
business day, Barger tried to log into her email account and discovered that it had been
deleted.  (*Id.* ¶ 37.)  The online schedule "noted [that] she was not available to treat any
patients."  (*Id.*)  Barger also learned that day that another employee, Kelsey Sorenson—
who had similarly expressed concerns about Vu's practice of completing and signing
documents on behalf of employees, without their permission—had just been terminated.
(*Id.* ¶ 38.)

Two days later, Dr. Strauss terminated Barger's employment.  (*Id.* ¶ 39.)  In an
email, Dr. Strauss stated, "It is unfortunate that you still feel we have handled your
documents incorrectly.  These are serious allegations.  I would rather not move forward
with an employment relationship in the middle of a conflict."  (*Id.*)

Barger brought this action against BlueSky, asserting seven claims: (1) violation of the Fair Labor Standards Act ("FLSA"); (2) declaratory judgment; (3) violation of the Minnesota Payment of Wages Act; (4) retaliation in violation of the Minnesota Whistleblower Act; (5) breach of contract; (6) breach of the covenant of good faith and fair dealing; and (7) unjust enrichment. BlueSky now asks the Court to dismiss the action in its entirety.

## DISCUSSION

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals

4

of the elements of a cause of action, supported by mere conclusory statements," will not

pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

*Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550

U.S. at 556.

## I.     Choice of Law

The Court first addresses the narrow choice-of-law provision within the

Agreement.  "A federal court sitting in diversity must apply the choice of law principles

of the state in which it sits, in this case Minnesota."  *Fla. State Bd. of Admin. v. L. Eng'g

& Env't Servs., Inc.*, 262 F. Supp. 2d 1004, 1010 (D. Minn. 2003).  Minnesota favors

enforcement of a choice-of-law provision within a contract.  *Hagstrom v. Am. Circuit

Breaker Corp.*, 518 N.W.2d 46, 48 (Minn. Ct. App. 1994).  The Agreement includes the

following provision:

> The parties agree that all questions concerning the validity, enforceability
> or construction of this Agreement shall be determined in accordance with
> the laws of Illinois.

(Agreement § 6.8.)  The Court will not determine in this Order whether the Agreement is

enforceable.  Thus, the Court will decide at a later date whether the enforceability of the

Agreement should be analyzed under Minnesota or Illinois law.

The specific claims in this case, however, do not relate to the validity,

enforcement, or construction of the Agreement, so the choice-of-law provision does not

govern the claims.  Instead, the parties appear to agree that Minnesota law applies.

Absent an actual conflict of law, no further choice-of-law analysis is needed, and the

Court applies the law of the forum state. *Novak Mut. Ins. Co. v. Am. Fam. Mut. Ins. Co.*, 590 N.W.2d 670, 672 (Minn. Ct. App. 1999), *aff'd*, 604 N.W.2d 91 (Minn. 2000). The Court therefore applies Minnesota law to the specific claims.

## II.     FLSA

BlueSky argues that Barger's FLSA claim should be dismissed because Barger is a professional employee and therefore exempt from the statute. In response, Barger voluntarily dismisses the FLSA claim. This claim is dismissed with prejudice.

## III.    Declaratory Judgment

BlueSky next argues that the Court should dismiss Barger's declaratory judgment claim because it is wholly duplicative of her breach of contract claim. In response, Barger argues that the claim is an alternative theory of recovery.

"Where a party's declaratory judgment claim is purely duplicative of its breach of contract claim, the declaratory judgment claim may be properly dismissed." *MidCountry Bank v. Rajchenbach*, No. 15-cv-3683 (SRN/TNL), 2016 WL 3064066, at *3 (D. Minn. May 31, 2016). But if the declaratory judgment claim is broader in scope than the breach of contract claim, then both claims may be pled. *Id.* at *3-4. Here, Barger seeks a declaration that BlueSky "materially breached Plaintiff's rights under the Agreement." (Am. Compl. ¶ 77.) Because the declaratory judgment claim is wholly duplicative of the breach of contract claim, the Court dismisses it.

## IV.     Minnesota Payment of Wages Act

BlueSky also asks the Court to dismiss Barger's claim for violation of the Minnesota Payment of Wages Act because Barger did not make a demand for unpaid

wages, as required by the statute, until the lawsuit was commenced.  In response, Barger argues that she was able to demand unpaid wages after the commencement of her lawsuit.

The Minnesota Payment of Wages Act requires an employer to pay an employee unpaid wages "within 24 hours after demand."  Minn. Stat. § 181.13.  If the unpaid wages are not paid within 24 hours, "the employer is in default."  *Id.*  "Until there is a demand as required by the statute, after resignation or discharge, the statutory provisions have no application."  *Chatfield v. Henderson*, 90 N.W.2d 227, 232 (Minn. 1958).

In *Chatfield*, the Supreme Court of Minnesota held that a demand for unpaid wages must be made prior to the commencement of a lawsuit.  *Id.*; *see also Outdoor Env't, Inc. v. Maro*, No. A04-1332, 2005 WL 1020898, at *4 (Minn. Ct. App. May 3, 2005) (concluding that no demand had been made when the respondent made the demand after litigation had begun, in his answer to the complaint).  Because Barger did not make a demand for unpaid wages prior to the commencement of this lawsuit, the Court must dismiss this claim.

## V.     **Minnesota Whistleblower Act**

Barger additionally alleges retaliation under the Minnesota Whistleblower Act ("MWA"), Minn. Stat. § 181.932.  The MWA provides that an employer may not discharge an employee because the employee, "in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer."  Minn. Stat. § 181.932.  An actual violation of law is not necessary under the MWA.  Instead, "the reported conduct must at least

implicate a violation of law." *Grundtner v. Univ. of Minn.*, 730 N.W.2d 323, 329 (Minn. Ct. App. 2007) (internal quotations and citation omitted).

BlueSky argues that this claim should be dismissed because Barger was not an employee under the MWA. The MWA provides that an employee is "a person who performs services for hire in Minnesota for an employer." Minn. Stat. § 181.931, subd. 3. BlueSky asserts that Barger was not an employee because her start date changed from April 1 to May 16, 2022, and Barger was terminated May 11, five days before her employment was to begin. Moreover, BlueSky asserts that Barger did not provide any services for BlueSky prior to her termination; instead, she merely engaged in "typical pre-employment activities." (Doc. No. 14 at 12.)

BlueSky's arguments are unavailing. The complaint states that Barger's employment with BlueSky was to begin on April 1, 2022; "[h]owever, she began performing services for Defendant at the request of Dr. Strauss in the beginning of March 2022." (Am. Compl. ¶ 41.) While BlueSky argues that the parties "changed [Barger's] start date from April 1, 2022, to May 16, 2022" (Doc. No. 22 at 5), Barger alleges that her employment began *prior* to April 1.

Additionally, Barger alleges that she engaged in more than just pre-employment activities. Barger gained access to an employee email account. Her photo and professional biography were put on BlueSky's website. She gained "full access to patient records" and "was encouraged to review them, which she did." (Am. Compl. ¶ 29.) She

was also asked to interview a potential new hire, which she alleges she did alone.[2]  All of this occurred before Barger's termination on May 11, 2022.  The Court concludes that Barger has plausibly alleged that she began performing services for BlueSky prior to May 11, 2022.  More discovery is necessary before the Court may determine when exactly Barger's employment began.  For now, however, Barger has plausibly alleged that she was a current employee of BlueSky at the time she was terminated.

BlueSky next argues that Barger did not make a "report," as required under the MWA.  Specifically, BlueSky contends that it knew about the alleged mishandling of documents and that Barger "had knowledge of this fact because she learned about the alleged issue from Kelsey Sorensen."  (Doc. No. 14 at 14.)  BlueSky reads too much into Barger's conversations with Sorenson and Dr. Strauss.  Barger alleges that she sent a text message to Dr. Strauss, indicating that Sorenson had told her "about the document situation" and expressing her concern that Vu was "filling out and signing documents without [her] knowledge or consent."  (Am. Compl. ¶ 33.)  Dr. Strauss responded, stating that she "ha[d] confidence in [Vu] and how she handles this."  (*Id.*)  The Court cannot conclude from this message that Dr. Strauss was fully aware of Vu's conduct.  Dr.

---

[2]     BlueSky asks the Court to consider an exhibit, which it asserts "establishes that BlueSky had offered [the interviewee] employment prior to [her] meeting with Barger." (Doc. No. 14 at 5 n.4.)  The exhibit details an email sent to the interviewee from Dr. Strauss, where Dr. Strauss says, "Attached please find a contract draft."  (Doc. No. 15-2.) Contrary to BlueSky's assertion, the Court does not find this to be an "initial documented offer of employment" and the Court will not consider the exhibit for the purpose of this motion to dismiss.  (Doc. No. 14 at 5 n.4 (quoting *Harrington v. Lesley Univ.*, 554 F. Supp. 3d 211, 240 n.21 (D. Mass. 2011).)

Strauss may have had faith in Vu, but that does not mean that she knew the extent of what was going on.

BlueSky additionally argues that Barger's report did not implicate a violation of the law. The MWA does not require an employee to "identify the specific law or rule that the employee suspects has been violated." *Abraham v. Cnty. of Hennepin*, 639 N.W.2d 342, 354-55 (Minn. 2002). Here, however, Barger did identify the specific law when she told Dr. Strauss that Vu "forged our signatures on documents." (Am. Compl. ¶ 33.) Even if Barger had not plausibly alleged forgery, BlueSky's conduct implicates the Illinois Physician Assistant Practice Act, which lists a variety of disciplinary actions that the Department may take if the licensing documents contain material misstatements or if someone "mak[es] any misrepresentation for the purpose of obtaining licenses." 225 ILCS 95/21. Barger has plausibly alleged a violation of this statute.

Overall, the Court concludes that Barger has sufficiently pled a violation of the MWA. The Court therefore denies BlueSky's request to dismiss this claim.

## VI.  Breach of Contract

Barger also brings a breach of contract claim against BlueSky, arguing that BlueSky failed to reimburse her for the licensing fees and wrongfully terminated her without just cause. The Agreement, which was attached to the complaint, is embraced by the pleadings. *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014). To prevail on a breach of contract claim under Minnesota law, Barger must show the following: "(1) formation of a contract, (2) performance by [Barger] of any conditions precedent to [her] right to demand performance by [BlueSky], and (3) breach of the contract by

10

[BlueSky]." *Lyon Fin. Servs. Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014).

BlueSky argues that this claim should be dismissed for two reasons. First, BlueSky argues that Barger has failed to plead that there was an enforceable written agreement between the parties. Barger signed the Agreement, but the signature for BlueSky has been left blank. (Agreement at 13.) Even so, Barger also alleges that she began to perform under the contract: she reviewed patients' medical records and interviewed a potential new hire for BlueSky. At this time, the Court does not have enough information to determine whether the Agreement is valid and enforceable. But for now, Barger has sufficiently alleged that the Agreement governed the parties' employment relationship and that BlueSky terminated Barger without cause and without 30 days' notice, in violation of the Agreement.

Second, BlueSky argues that, under the Agreement, BlueSky had no obligation to pay for Barger's Illinois and Michigan licenses. As an initial matter, the Agreement did not require that Barger be licensed in Michigan. The Agreement required Barger to be licensed "in Illinois and Minnesota." (Agreement § 2.4.) Any agreement between BlueSky and Barger for Barger to become licensed in Michigan falls outside of this Agreement. And Barger has plausibly alleged that, as part of a separate agreement, BlueSky agreed to pay her Michigan licensing fees. As for the Illinois licensing fees, the Court will determine the scope and enforceability of the Agreement at a later date, likely at the summary judgment stage.

In sum, the Court concludes that Barger has sufficiently alleged a breach of contract claim.

## VII.   Breach of the Implied Covenant of Good Faith and Fair Dealing

BlueSky contends that Barger's breach of the covenant of good faith and fair dealing claim should be dismissed because Barger is merely reasserting her breach of contract claim.  Barger argues that this claim involves an alternative theory of recovery.

Under Minnesota law, each contract contains an implied covenant of good faith and fair dealing.  *Columbia Cas. Co. v. 3M Co.*, 814 N.W.2d 33, 36 (Minn. Ct. App. 2012).  The implied covenant of good faith and fair dealing "requires a party in a contractual relationship to refrain from arbitrary and unreasonable conduct that has the effect of preventing the other party to the contract from receiving the fruits of the contract."  *i-Systems, Inc. v. Softwares, Inc.*, No. 02-cv-1951, 2004 WL 742082, at *12 (D. Minn. Mar. 29, 2004) (internal quotations and citation omitted).

In her breach of contract claim, Barger argues that BlueSky terminated her without just cause, which is a breach of an express term in the Agreement.  Barger asserts that same argument for her implied covenant claim, namely that BlueSky terminated her "without cause."  (Am. Compl. ¶ 71.)  "[A] claim for breach of an implied covenant of good faith and fair dealing implicitly assumes the parties did not expressly articulate the covenant allegedly breached."  *Grady v. Progressive Direct Ins. Co.*, No. 22-cv-866, 2022 WL 18494898, at *6 (D. Minn. Nov. 30, 2022) (internal quotations and citations omitted).  At this time, Barger has failed to demonstrate that BlueSky breached an implied covenant in the Agreement and instead solely alleges a breach of an express

covenant.  The Court therefore dismisses Barger's implied covenant claim.  The dismissal will be without prejudice, as it is possible that Barger will uncover additional evidence that would allow her to plausibly plead this claim.

## VIII.  Unjust Enrichment

Barger's last claim is for unjust enrichment.  "To establish a claim for unjust enrichment under Minnesota law, a plaintiff must demonstrate that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1019 (D. Minn. 2012) (internal quotations and citation omitted).

Barger argues that BlueSky was unjustly enriched by (1) failing to make payments for work performed by her and (2) failing to reimburse her for expenses related to obtaining licenses.  (Am. Compl. ¶¶ 93-96.)  BlueSky argues that Barger has failed to allege that BlueSky received anything of value.  The Court rejects this argument.  Barger has sufficiently alleged that she interviewed a potential new hire for BlueSky, completed training with a BlueSky employee, and reviewed patient records in preparation for clinical work.  Thus, Barger has plausibly alleged that she conferred a benefit to BlueSky.

Additionally, BlueSky argues that unjust enrichment may not be plead in the alternative because Barger alleges that the Agreement governed their relationship. "Although a party may not ultimately recover on both breach of contract and unjust enrichment claims, it may pursue these alternative theories until it is conclusively decided that a valid and enforceable contract exists between the parties which governs the specific

dispute before the court." *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1323 (D. Minn. 2018) (internal quotations and citation omitted).  BlueSky denies the existence of a valid and enforceable agreement between the parties.  Moreover, it is unclear whether a valid and enforceable agreement existed between Barger and BlueSky regarding the Michigan licensure requirement and fee reimbursement.  At this time, the Court will not make a finding about the scope, validity, or enforceability of the Agreement or the existence of a second agreement regarding licensing fees.  Instead, these findings will likely be made at the summary judgment stage, at which point the Court will address whether the unjust enrichment claim should be dismissed.  Until then, Barger has sufficiently pled this alternative claim.

## CONCLUSION

For the reasons outlined above, the Court grants BlueSky's motion to dismiss Barger's FLSA, declaratory judgment, breach of the implied covenant of good faith and fair dealing, and Minnesota Payment of Wages Act claims.  The Court denies BlueSky's motion with respect to Barger's remaining claims of retaliation in violation of the Minnesota Whistleblower Act, breach of contract, and unjust enrichment.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Defendant BlueSky TelePsych, LLC's motion to dismiss (Doc. No. [12]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

14

     a.        The Court **DENIES** Defendant's motion to dismiss Plaintiff's claim of retaliation in violation of the Minnesota Whistleblower act (Count I).

     b.        The Court **DENIES** Defendant's motion to dismiss Plaintiff's breach of contract claim (Count II).

     c.        The Court **GRANTS** Defendant's motion to dismiss Plaintiff's breach of the covenant of good faith and fair dealing claim (Count III).  This claim is **DISMISSED WITHOUT PREJUDICE**.

     d.        The Court **GRANTS** Defendant's motion to dismiss Plaintiff's declaratory judgment claim (Count IV).  This claim is **DISMISSED WITH PREJUDICE**.

     e.        The Court **GRANTS** Defendant's motion to dismiss Plaintiff's Fair Labor Standards Act claim (Count V).  This claim is **DISMISSED WITH PREJUDICE**.

     f.        The Court **GRANTS** Defendant's motion to dismiss Plaintiff's violation of the Minnesota Payment of Wages Act claim (Count VI).  This claim is **DISMISSED WITH PREJUDICE**.

     g.        The Court **DENIES** Defendant's motion to dismiss Plaintiff's unjust enrichment claim (Count VII).

Dated:  May 19, 2023           s/Donovan W. Frank
                           DONOVAN W. FRANK
                           United States District Judge